### Petition of JACKSONVILLE GAS CORPORATION.

Railroad & Public Utilities Commission.

July 3, 1957.

Elliott Adams, Jacksonville, for petitioner.

Lewis W. Petteway, commission general counsel, Harold Janes, commission gas engineer, and Pace Allen, commission accountant, for the commission's staff and the public generally.

BY THE COMMISSION.

Jacksonville Gas Corporation, a public utility as defined in chapter 366, Florida Statutes, operating under the jurisdiction of this commission, filed its petition seeking authority to modify its rates through a general revision of its present rate schedule.

The petitioner is a Florida corporation engaged in the production and sale of manufactured gas to consumers in Jacksonville and environs. In its application the utility represents that the cost of labor, materials, fuels and supplies has increased to such an extent that the presently authorized rates are insufficient to provide a fair and reasonable return on the reasonable value of its property used and useful in serving the public.

A public hearing on the application was held in Jacksonville on June 12th, at which time the company presented testimony and exhibits in support of its petition. No protestants appeared at the hearing.

### Rate Base

The petitioner has developed a rate base, as of December 31, 1956, of $2,758,187.14, obtained by deducting depreciation reserve from utility plant investment.

Although a provision for working capital is usually included in rate base determinations, in this instance no issue was taken with the obtained value nor the method employed in calculating such value since the commission staff has determined that a proper working capital allowance would be almost entirely offset by crediting to the rate base the customer deposits held by the company on which no interest is paid. The net result, therefore, of applying the additional calculation would produce a rate base not substantially at variance with that set forth by the applicant.

### Rate of Return

Under order #1571, entered December 2, 1949 in docket #1641, this commission found that Jacksonville Gas Corporation should be permitted rates which would yield a rate of return of 7% on the reasonable value of its property devoted to serving its customers. This position was re-affirmed in order #1922, dated August 21, 1953, in docket #3830-GU, wherein the commission approved rates designed to produce a return of approximately 6.4%.

In the present proceeding, applicant has established a rate base of $2,758,187.14, as of December 31, 1956. A return of 7% on this value would amount to $193,073.10. For the twelve months end-

ing December 31, 1956 applicant shows operating revenues of $1,-158,763.96; expenses and taxes for the same period (including a credit of $23,110.85 for income tax carry back) were $1,111,148.55, resulting in net operating revenues for the period of $47,615.41 or a return of 1.73%. Elimination of the $23,110.85 income tax carry back would result in actual net operating revenues of $24,504.56 representing a return of 0.89%.

To reduce, in part, the deficiency in earnings indicated above, petitioner has proposed revised rate schedules as set out in exhibit 1 of the petition. The application of these proposed rates to the 1956 operations, adjusted to reflect sharp increases in oil costs, would result in utility operating income of $113,175.85, representing a return of 4.10%.

### Rate Structure

Measured by the most conservative regulatory standards a rate of return of 4.10% is extremely moderate. From the record in this proceeding there is little question that the applicant is entitled to and should be allowed the additional revenues sought. However, it appears that some basis for contention exists in the rates proposed to create these additional revenues.

In its petition, applicant has proposed rates which result in increases varying from a low of 4.28% for the 250-therm customers to a high of 19.68% for the 2-therm consumer. Petitioner's testimony in support of variable increases was based on the premise that the cost of service requirement varies with the different customer classification, a position with which we are basically in accord.

Rates are equitable when they assess to each individual customer his just and proper share of the cost of carrying on the business in accordance with his peculiar use of the service. While it is doubtless true that the unit cost requirement is less for the higher consumption customer, we believe it to be equally true that the cost-to-serve differential is compensated for in the present basic rate structure since any increase in consumption is accompanied by a corresponding decrease in the average cost per unit consumed.

The imposition of variable or graded increases, as herein proposed, can be supported only under the premise that corrective measures are necessary to eliminate inequities in the present rate structure. Since applicant introduced into the record no testimony or evidence in support of this contention, either on direct or under questioning on the graded increases, it is logical to assume that, in

its view, the present rates give adequate consideration to cost-to-serve differentials. We must, therefore, in the absence of more substantive argument, take issue with the implied contention that equitable rates require the lower consumption customer to shoulder the burden of increases 3 to 4 times higher than those imposed on the larger consumer.

From the preceding, presuming that the present rate structure is equitable, such equality can be preserved only through the maintenance of equivalent ratios between the consumption blocks in any proposed rate structure. Such a circumstance can ensue only through the application of a uniform percentage increase, since the imposition of variable increases will disturb these ratios, thereby resulting in rates preferential to one group at the expense of another.

The staff has calculated that an increase of 8.52% applied uniformly throughout the rate structure as petitioned for would, when applied to the adjusted bill analysis, produce total gas service revenues of $1,258,059.30, or $245.93 more than the $1,257,813.37 produced by the rates petitioned for.

*Findings*

From the record and the above considerations, we find as follows —(1) That authority to institute the schedule of charges petitioned for under "gas service rate" in exhibit #1 should be denied. (2) That the company should be authorized to apply a uniform 8.52% increase to the presently existing rates. (3) That authority to change the size of certain consumption blocks as requested should be granted—in these instances the sum of the weighted averages of the components shall be equal to 108.52% of the rate presently applicable to that consumption block. (4) That the charges for flat rate service as petitioned for should be approved. (5) That approval should be granted for conversion from volumetric billing to billing on a therm basis.

It is therefore ordered that Jacksonville Gas Corporation be, and it is hereby authorized to change its consumption blocks and adjust its rates and charges including flat rate service consistent with the foregoing findings. Said increases shall become effective with all bills rendered on and after July 15, 1957.

It is further ordered that Jacksonville Gas Corporation be, and it is hereby authorized to convert from volumetric billing to billing on a therm basis.